IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| RAYA NSHEIWAT,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART, INC.,<br><br>Defendant. | NO. 3:20-cv-00064-RP-HCA<br><br><br>**PLAINTIFF RAYA NSHEIWAT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF ANDREW J. RENTSCHLER, Ph. D.** |

Plaintiff, RAYA NSHEIWAT, states as follows in response to Defendant's Motion to Exclude the Report and Testimony of Andrew J. Rentschler, Ph. D:

## **INTRODUCTION**

Defendant has not set forth any proper reason to bar the testimony of Dr. Rentschler. Defendant either ignores or misstates Dr. Rentschler's opinions and his sound reasoning applying generally accepted scientific principles to the facts of this case.

Dr. Rentschler has testified to the biomechanics of personal injuries hundreds of times. His Report sets for the scientific bases for his opinions and how he reached those opinions. Defendant's argument that biomechanics opinions in injury cases are improper because they are merely medical opinions is not only lacking in any logic or supporting authority, it is directly contradicted by guidance provided to federal judges by the Federal Judicial Center. Defendant's Motion should be denied in all respects.

## **DR. RENTSCHLER'S BACKGROUND**

Dr. Rentschler has devoted his professional life to analysis of the biomechanics of personal injuries. He has a Bachelor of Science degree from Carnegie Mellon University in

mechanical engineering with a minor in biomedical engineering. He also has masters and doctorate degrees in bioengineering from the University of Pittsburgh. (See June 30, 2021 Report, attached hereto as Exhibit A, p.1 of Professional Biographic Outline). Dr. Rentschler has completed advanced coursework regarding biomechanics, kinematics of the human body, biomaterials, anatomy and physiology. His areas of specialty include injury causing biomechanics, human injury tolerance, human kinetic analysis and injury mechanism analysis. Dr. Rentschler has been retained by the National Hockey League and the U.S. military to provide analysis and design development to prevent injuries related to trauma and injuries. (*Id.*).[1]

In the three years preceding his engagement in this matter, Dr. Rentschler testified in personal injury matters 74 times, including providing trial testimony on 26 occasions. (Exhibit A, at Deposition and Trial List for Andrew J. Rentschler). Dr. Rentschler's updated testimony list shows he has testified an additional 119 times since he was retained in this matter including an additional 39 occasions where he has provided testimony at trial. (See updated list of testimony attached hereto as Exhibit B). Thus, since January 1, 2018, Dr. Rentschler has testified *at trial* to the biomechanics of personal injuries on a total of 65 occasions.

In addition, Dr. Rentschler has authored or co-authored 9 peer-reviewed journal publications, 14 book chapters and 4 peer-reviewed abstracts. (Exhibit A, at Professional Biographic Outline, pp. 3-4). He also belongs to several professional associations and has received additional professional education related to biomechanics of injuries and accident reconstruction. (*Id*. p.2).

Dr. Rentschler's qualifications to testify to the opinions he has reached are further supported by the *Reference Manual on Scientific Evidence* ("the Manual") developed by the

---

[1] Dr. Rentschler has also been retained at least twice by Defendant to provide biomechanical analysis related to slip and fall injuries.

Federal Judicial Center. (See Excerpt of *Reference Manual on Scientific Evidence,* attached hereto as Exhibit C). The Manual provides in relevant part as follows:

> In situations where proximate cause is an issue, the trier of fact can benefit from a thorough understanding of the mechanics that created an injury. The engineering and scientific communities are increasingly called on to provide expert testimony that can assist courts and juries in coming to this type of understanding…
>
> Specifically, one cross-disciplinary domain deals with the study of injury mechanics, which spans the interface between mechanics and biology. The traditional role of the physician is the diagnosis (identification) of injuries and their treatment, not necessarily a detailed assessment of the physical forces and motions that created injuries during a specific event. The field of biomechanics (alternatively called biomechanical engineering) involves the application of mechanical principles to biological systems, and is well suited to answering questions pertaining to injury mechanics…
>
> Such an expert would rely on medical records to obtain information regarding clinical diagnoses, and would rely on engineering and physics training to understand the mechanics of the specific event that created the injuries. A practitioner whose experience spans the interface between mechanics (i.e. engineering) and biology (i.e. science), considered in the context of the facts of a particular case, can be of significant assistance in answering questions pertaining to injury mechanism and causation.

(Exhibit C, pp. 900-902).

## **DR. RENTSCHLER'S OPINIONS**

Dr. Rentschler's opinions are based on methodologies that have been peer-reviewed and are generally accepted in the scientific and biomedical communities. (Exhibit A, pp. 1-2). His analysis and opinions are supported by 38 scholarly publications, several of which expressly dealt with cervical, disc and other back injuries. (*Id.* fn. #1-38). Dr. Rentschler applied the scientific methodology known as a failure (or fault tree) analysis to make a systematic examination of the incident that consisted of the following steps:

1. Identify the injuries attributed to the subject incident;

2. Determine Ms. Nsheiwat's kinematic response (movement) as a result of the subject incident; and

3. Define the injury mechanisms known to cause the reported injuries and determine whether the defined mechanisms were created during the subject incident.

(*Id.* p.2).

Dr. Rentschler used the forensic evidence he examined along with the applicable biomedical research "to identify whether or not there was a biomechanical relationship between the event and the diagnosed injuries." *(Id*. pp. 2-3). He noted Plaintiff's age, sex, height and weight. He described the details of Plaintiff's fall, noting that it occurred after she turned to return to her vehicle, took one or two steps forward, shifted her entire weight to her right foot, and fell on her hands and knees as she reflexively extended her arms to brace for the fall.

Dr. Rentschler emphasized that he was not offering any medical opinions or supporting or refuting any of the medical opinions that have been provided. (*Id*. p.3). Applying the scientific failure analysis to the forensic evidence he had gathered, Dr. Rentschler reached the following opinions:

1. *Ms. Nsheiwat's kinematics are wholly consistent with a slip and fall event resulting from her stepping and slipping on a plastic hanger which was on the ground in the shopping cart return corral of Walmart store #1241 in Davenport, Iowa;*
2. *Ms. Nsheiwat's kinematics as a result of the slip and fall event produced the necessary injury mechanisms to result in her lumbar and right shoulder injuries; and*
3. *Therefore, a causal biomechanical relationship exists between Ms. Nsheiwat's slip and fall event and her diagnosed lumbar and right shoulder injuries.*

(*Id*. p.8).

**ARGUMENT**

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 applies a three-part test to the admissibility of expert testimony: Is the testimony based on sufficient facts or data, is it the product of reliable principles and methods, and has the witness reliably applied the facts and data to the fact of the case? *Lauzon v. Senco Products,* 270 F.3d 681, 686 (8th Cir. 2001). When applying the Rule 702 criteria the exclusion of expert testimony is the exception rather than the rule. *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997); *S.E.C. v. Das*, 723 F.3d 943, 950 (8th Cir. 2013). The *Daubert* court held that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993).

All criteria for the admissibility of Dr. Rentschler's opinions have been met. First, Dr. Rentschler is qualified by knowledge, skill, experience, training *and* education. He holds degrees in mechanical engineering, biomedical engineering and bioengineering. He has worked, published, presented, testified, and completed additional advanced coursework in the fields of

biomechanics, kinematics, biomaterials, anatomy and physiology. His areas of specialty include injuries causing biomechanics, human injury tolerance, human kinetic analysis and injury mechanism analysis, all of which are on point to his assignment in this case.

Second, Dr. Rentschler's knowledge and experience will help the jury to understand the evidence and to determine disputed facts. Dr. Rentschler provides a detailed, literally step-by-step analysis of Plaintiff's fall. He then explains in detail why Plaintiff's kinematics from the fall are consistent with her slipping on a plastic hanger on the ground in the Walmart parking lot. Dr. Rentschler then explains in detail how the kinematics resulting from the manner in which Plaintiff fell produced the necessary injury mechanisms to result in the injuries suffered by Plaintiff. Dr. Rentschler explains what an injury mechanism is and how it is determined. Finally, Dr. Rentschler explains why there is a causal biomechanical relationship between Plaintiff's fall and her injuries. Only a juror who has the knowledge, skill, experience, training or education similar to that of Dr. Rentschler would have prior knowledge of any portion of Dr. Rentschler's analysis.

Third, Dr. Rentschler has based his opinions on sufficient facts or data. He documented Plaintiff's physical attributes, carefully reviewed the videotape of the incident, and reviewed photographs of the flat, clear plastic hanger that caused Plaintiff's fall. Unlike many instances where a biomechanical expert would have to reconstruct the circumstances of an incident, such as a vehicular accident, Dr. Rentschler was able to review evidence related to exactly why and how Plaintiff fell and the impact the fall had on her body.

Fourth, Dr. Rentschler's opinions are the product of reliable principles and methods. Dr. Rentschler explains the principles and methods he applied, states that these are generally accepted in the field of biomechanics, provides citations to 38 scholarly publications and

explains the additional research he has performed on anthropomorphic test devices and human subjects.

Fifth, Dr. Rentschler has reliably applied the principles and methodologies upon which he bases his opinions to the facts of this case. Dr. Rentschler explains that his opinions are based entirely on principles that are generally accepted in the field. He explains how those principles led to his conclusions and opinions.

The arguments in Defendant's Motion and Memorandum are unfounded. Defendant's primary argument – repeated in one form or another at least 10 times – is that Dr. Rentschler is rendering medical opinions. Dr. Rentschler, however, merely reviewed Plaintiff's medical records and assumed the diagnoses of her treating physicians were accurate. As Dr. Rentschler stated:

> *It is important to note that this biomedical investigation is not intended to offer any medical diagnoses, prognoses, or treatment plans. There is also no intention to offer rebuttal to existing diagnoses provided by the treating physicians. Rather, this biomedical investigation works within the confines of the outlined methodology to determine if the diagnoses are related to the subject incident…*
>
> *The biomedical analysis performed involved reviewing the medical records, and utilizing my training and experience with human anatomy and physiology to understand the tissue structures involved in the diagnosed injuries. My analysis does not attempt to proffer or refute medical opinions regarding diagnoses, prognoses, or treatment.*

(Exhibit A, p.3) (Emphasis in original).

Thus, Dr. Rentschler assumed that the diagnoses made by Plaintiff's physicians were accurate. He did not suggest or provide any treatment for Plaintiff.

Likewise, Dr. Rentschler did not "render medical opinions regarding the precise cause of a specific injury." [Dkt. 180 ¶ 24]. Nor did he usurp the province of the jury by opining that the clothes hanger "caused Plaintiff to slip …" or that her "injuries were caused by Plaintiff's slip and fall incident." [*Id.* ¶ 25]. Dr. Rentschler never reached any opinion as to what "caused" Plaintiff's injuries. (Exhibit A, p.8). He testified that the incident was "consistent" with Plaintiff slipping on the hanger, that the fall "[p]roduced necessary injury mechanisms to result in her … injuries," and that there was a "causal biomechanical relationship" between the event and Plaintiff's injuries. [*Id.*]. As stated by the Federal Judicial Center in its Manual, the "traditional role of the physician is the diagnosis (identification) of injuries and their treatment, not necessarily a detailed assessment of the physical forces and motions that created injuries during a specific event." (Exhibit B-2). On the other hand, a biomedical expert "would rely on medical records to obtain information regarding clinical diagnoses, and would rely on engineering and physics training to understand the mechanics of the specific event that created the injuries." (*Id.*). This is exactly what Dr. Rentschler did.

Finally, Defendant complains about the evidence relied on by Dr. Rentschler. Defendant takes issue with the fact that Dr. Rentschler did not inspect an "exemplar" of the hanger to confirm that the clear, flat clothes hanger depicted in the photographs taken by Defendant was, in fact, a clear, flat clothes hanger.[2] Defendant does not assert anything of relevance that Dr. Rentschler could have learned from examining a physical hanger, particularly not an "exemplar,"

---

[2] Defendant claims that Plaintiff refused to identify the hanger depicted in the photographs that were taken by Defendant at some unknown time approximately five years before Plaintiff's deposition as the exact hanger she slipped on. Plaintiff, however, gave the only truthful answer possible in light of the fact that she was not present when the photographs were taken. She testified that the hanger appeared to be the same color, shape and approximate size as the hanger she slipped on. It is impossible for her to have any further firsthand knowledge of the identity of the hanger that Defendant used for its photographs.

*i.e.*, a substitute for the actual hanger. Defendant does not explain why Dr. Rentschler should not have relied on photographs of the hanger that *Defendant* took and produced in discovery. Defendant likewise complains that Dr. Rentschler did not examine Plaintiff's shoes, without providing any evidence or argument that doing so was necessary for Dr. Rentschler to reach his opinions. While Defendant may be able to cross-examine Dr. Rentschler on these issues, they certainly do not provide any basis to bar his testimony.

**CONCLUSION**

Dr. Rentschler is a well-qualified biomechanics expert. He applied generally accepted, peer-reviewed information to the facts of this case to reach opinions based on the biomechanics of the incident involving Plaintiff. Dr. Rentschler's opinions will provide helpful information to the jurors. Defendant's motion to bar Dr. Rentschler's testimony should be denied.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion to Exclude the Report and Testimony of Andrew J. Rentschler, and for the entry of any further relief which is just.

Respectfully Submitted.

**RAYA NSHEIWAT, Plaintiff**

By:/s/ *Gary P. Hollander*

Gary P. Hollander (ghollander@agdglaw.com)
Thomas J. Hayes (thayes@agdglaw.com)
Aronberg Goldgehn Davis & Garmisa
225 W. Washington St. Suite 2800
Chicago, Illinois 60606
Telephone: (312) 828-9600
Facsimile: (312) 828-9635

Casey C. Kannenberg
SHARUZI LAW GROUP, LTD
518 17th St. Ste. 270
Denver, CO 80202
Tel: (303) 226-0330
Email: ckannenberg@sharuzilaw.com

Candy K. Pastrnak
PASTRNAK LAW FIRM, P.C.
313 West Third Street
Davenport, IA  52801
E-mail: ckpastrnak@pastrnak.com

***ATTORNEYS FOR PLAINTIFF***

**CERIFICATE OF SERVICE**

       I hereby certify that on July 21, 2023, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Southern District of Iowa, Davenport Division, using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey Michael Marks<br>ATTORNEY AT LAW, JEFFREY M. MARKS<br>5 KILDARE COURT<br>DEERFIELD, IL 60015<br>312-606-0400<br>Fax: 312-585-5538<br>Email: jeffreymichaelmarks@gmail.com | Jonathan Feinstein<br>JMF LAW LLC<br>721 MASON LANE<br>LAKE IN THE HILLS, IL 60156<br>847-857-8951<br>Email: feinsteinjonathan@gmail.com |
| Benjamin Michael Weston<br>Alexandra Galbraith<br>LEDERER WESTON CRAIG PLC<br>4401 WESTOWN PARKWAY SUITE 212<br>WEST DES MOINES, IA 50266<br>515-224-3911<br>Fax: 515-224-2698<br>Email: bweston@lwclawyers.com<br>Email: AGalbraith@lwclawyers.com | J. Michael Kvetan<br>Patrick McDonnell<br>MCDONNELL & ASSOCIATES, PC<br>860 1ST AVENUE, SUITE 5B<br>KING OF PRUSSIA, PA 19406<br>610-337-2087<br>Fax: 610-337-2575<br>Email: mkvetan@mcda-law.com<br>Email: pmcdonnell@mcda-law.com |
| Stephen T. Fieweger<br>STEPHEN T. FIEWEGER, P.C.<br>5157 UTICA RIDGE ROAD<br>DAVENPORT, IA 52807<br>563-424-1982<br>Fax: 563-424-1983<br>Email: sfieweger@fiewegerlaw.com | Anish Parikh<br>PARIKH LAW GROUP, LLC<br>150 S. WACKER DRIVE, SUITE 2600<br>CHICAGO, IL 60606<br>312-725-3476<br>Email: anish@plgfirm.com |

                                                           By: *Gary P. Hollander*
                                                           Gary P. Hollander