

**ARCCA, INCORPORATED**
Three Gateway Center
401 Liberty Avenue, Suite 1325
Pittsburgh, PA 15222
**PHONE:** 866-502-7222 **FAX:** 412-566-6798
www.arcca.com

June 30, 2021

Gary Hollander, Esquire
Aronberg Goldgehn
330 N. Wabash Avenue
Suite 1700
Chicago, IL 60611

    Re: *Nsheiwat, Raya v. Walmart, Inc.* (3:20-cv-64)
        *United States District Court, Southern District of Iowa, Davenport Division*
        No.: 3:20-cv-00064-RP-HCA
        ARCCA File No.: 6059-001

Dear Mr. Hollander:

Thank you for the opportunity to participate in the above-referenced matter. Your firm retained ARCCA, Incorporated to evaluate the subject incident in relation to Raya Nsheiwat. This analysis is based on information currently available to ARCCA and is only to be issued in its entirety. However, ARCCA reserves the right to supplement or revise this report if additional information becomes available.

The opinions given in this report are based on my analysis of the materials available using methodologies generally accepted in the scientific and biomedical communities.[1,2,3] The opinions are also based on my education, background, knowledge, and experience in the fields of accident reconstruction, human kinematics, and biomechanics. I have studied and taught at the University level the very principles used in my work in this matter. I am uniquely trained in the scientific methodologies required to evaluate mechanisms of injury to the human body during both inertial and impact loading. I obtained a Doctor of Philosophy (Ph.D.) degree in Bioengineering from the University of Pittsburgh, a Master of Science degree in Bioengineering from the University of Pittsburgh, and a Bachelor of Science degree in Mechanical Engineering with a minor in Biomedical Engineering from Carnegie Mellon University. I have completed advanced coursework in the fields of musculoskeletal biomechanics, kinematics, injury tolerance, biomaterials, physics, statics and dynamics, physiology and anatomy, impact mechanics, and materials engineering. I am also a member of the Society of Automotive Engineers. While at the University of Pittsburgh, I assisted in teaching courses to graduate students related to Biomedical Engineering. While at ARCCA, I continue to conduct technical lectures dealing with the causation and prevention of biomechanical failures during both inertial and impact loading.

I have conducted studies to evaluate the kinematics and biomechanics of the human body with respect to injury potential. My testing and research have been performed with both anthropomorphic test devices and human subjects, and have included gait analyses. As such, I am very familiar with the theory and application of human tolerance to inertial and impact loading, as well as the techniques and processes for evaluating human kinematics and injury potential. I also have extensive experience

---

[1] Nahum, A., Gomez M. (1994). Injury Reconstruction: The Biomechanical Analysis of Accidental Injury, (SAE 940568). Warrendale, PA, Society of Automotive Engineers.
[2] Robbins, D. H., et al., (1983) Biomechanical Accident Investigation Methodology Using Analytic Techniques, (SAE 831609). Warrendale, PA, Society of Automotive Engineers.
[3] Walz, F.H., and Muser, M.H., (2000). "Biomechanical Assessment of Soft Tissue Cervical Spine Disorders and Expert Opinion in Low Speed Collisions." Accident Analysis and Prevention 32: 161-165.

Gary Hollander, Esq.
June 30, 2021
Page 2



with evaluating human kinematics with respect to gait and various conditions affecting human ambulation.

**Incident Description:**

According to the available information, on July 9, 2018, Ms. Raya Nsheiwat was a patron at the Walmart store #1241 located in Davenport, Iowa. Ms. Nsheiwat was walking through the parking lot returning her shopping cart when she slipped on a plastic hanger and fell to the ground. ARCCA, Inc.'s role in this matter was to evaluate Ms. Nsheiwat's slip and fall event and perform a biomechanical injury causation analysis pertaining to Ms. Nsheiwat's reported injuries.

**Materials Reviewed:**

As part of my analysis of this case, I reviewed numerous documentary materials, including:

- Customer Incident Report [July 9, 2018]
- Color Photographs of the incident location
- Two surveillance videos of the subject incident [July 9, 2018]
- Complaint at Law [July 6, 2020]
- Plaintiff's Answers to Defendant Walmart, Inc.'s Interrogatories [March 2, 2021]
- Telephone Conversation with Ms. Raya Nsheiwat [June 29, 2021]
- Medical records and reports pertaining to Raya Nsheiwat
- Publicly available literature, including, but not limited to, the documents cited within the report, learned treatises, text books, and scientific standards.

**Biomechanical Analysis:**

The biomechanical analysis performed in the context of this incident utilized a sound scientific methodology that has been subjected to peer-review and publication and has been generally-accepted by the scientific community.[4,5,6] The analysis consisted of the following steps:

1. Identify the injuries attributed to the subject incident;
2. Determine Ms. Nsheiwat's kinematic response (movement) as a result of the subject incident;
3. Define the injury mechanisms known to cause the reported injuries and determine whether the defined mechanisms were created during the subject incident;

The outlined methodology (referred to as a failure analysis) enables a systematic examination of the subject incident by beginning at the undesired consequence.[7] The fundamental mechanical process, or injury mechanism, responsible for each injury was defined. The subject incident was then broken down according to the occupant response to evaluate the presence or absence of the responsible injury mechanisms. The forensic evidence and biomedical research conducted were used in conjunction with these steps to identify whether or not there was a biomechanical relationship between the event and

---

[4] Walz, F.H., and Muser, M.H., (2000). "Biomechanical Assessment of Soft Tissue Cervical Spine Disorders and Expert Opinion in Low Speed Collisions." Accident Analysis and Prevention 32: 161-165.

[5] Nahum, A., Gomez M. (1994). Injury Reconstruction: The Biomechanical Analysis of Accidental Injury, (SAE 940568). Warrendale, PA, Society of Automotive Engineers

[6] Robbins, D.H., et al., (1983) Biomechanical Accident Investigation Methodology Using Analytic Techniques, (SAE 831609). Warrendale, PA, Society of Automotive Engineers.

[7] Recht, J.L. (1974). Introduction to Fault Tree Analysis, (SAE 740432). Society of Automotive Engineers.



the diagnosed injuries. It is important to note that this biomedical investigation is not intended to offer any medical diagnoses, prognoses, or treatment plans. There is also no intention to offer rebuttal to existing diagnoses provided by the treating physicians. Rather, this biomedical investigation works within the confines of the outlined methodology to determine if the diagnoses are related to the subject incident, in addition to offering opinions regarding the event severity, occupant response, and injury mechanisms in the context of relevant biomechanical attributes.

### Reported Injuries:

The role of a biomechanist is not to be confused with that of a treating physician or medical doctor. Scientific literature distinctly separates the tasks of these respective fields for the purpose of determining injury causation.[8,9,10] The biomechanical analysis performed involved reviewing the medical records and utilizing my training and experience with human anatomy and physiology to understand the tissue structures involved in the diagnosed injuries. My analysis *does not* attempt to proffer or refute medical opinions regarding diagnoses, prognoses, or treatment. Ms. Nsheiwat was diagnosed with the following injuries subsequent to the subject incident:

- Lumbar spine strain with disc bulges from L3 to S1 and facet arthropathy at L3-4, L4-5 and L5-S1.
- Right shoulder rotator cuff tear, impingement syndrome, and subacromial bursitis

### Surveillance Video:

Surveillance video from two different parking lot video cameras were reviewed and analyzed for this matter. The first video entitled "EXTERIOR_DRIVE_08_02" is dated 07/09/2018 and shows the exterior parking lot of the store. At the 3:37:23 mark, an individual approaches the shopping cart return corral and proceeds to gather the shopping carts from the corral. At approximately 3:38:25, Ms. Nsheiwat can be seen pushing a cart from the bottom left corner of the frame to her vehicle. Ms. Nsheiwat reaches her vehicle at 3:39:02 and proceeds to unload her cart. The individual gathering the carts then proceeds to guide the carts back toward the front of the store at the bottom of the video frame at 3:39:30. At 3:39:56, Ms. Nsheiwat then starts to push her shopping cart across the parking aisle to the return corral. At 3:40:09, Ms. Nsheiwat stops and then turns around to return to her vehicle. Ms. Nsheiwat appears to take one or two steps forward and then her arms extend out and she falls forward onto her knees and hands. Ms. Nsheiwat then pushes herself up onto her knees and then gets her left foot up so that she is kneeling on her right knee. Ms. Nsheiwat then stands up on both feet.

---

[8] Walz, F.H., and Muser, M.H., (2000). "Biomechanical Assessment of Soft Tissue Cervical Spine Disorders and Expert Opinion in Low Speed Collisions." Accident Analysis and Prevention 32: 161-165.

[9] Nahum, A., Gomez M. (1994). Injury Reconstruction: The Biomechanical Analysis of Accidental Injury, (SAE 940568). Warrendale, PA, Society of Automotive Engineers

[10] King, A.I., (2000) "Fundamentals of Impact Biomechanics: Part I – Biomechanics of the Head, Neck, and Thorax." Annual Reviews in Biomedical Engineering, 2: 55-81.

Gary Hollander, Esq.
June 30, 2021
Page 4





**Figure 1. Screenshots from the first surveillance video showing Ms. Nsheiwat's fall.**

The second video is entitled "EXTERIOR_DRIVE_09" and the video camera appears to be mounted to the left of the location of the first camera. Ms. Nsheiwat is again seen pushing her cart across the parking lot to the return corral. Ms. Nsheiwat's body is hidden from view by parked vehicles and only her head and shoulders are visible. As Ms. Nsheiwat turns and takes a step back toward her vehicle, her head and shoulders quickly drop down out of view.

**Kinematics:**

The kinematics and biomechanics of gait analysis and slip and fall events have been well established through research and human subject testing and are founded in the fundamental principles of engineering, physics, biomechanics, anatomy, and physiology.[11,12,13,14,15,16] According to the available information, Ms. Nsheiwat was 57 years old at the time of the subject incident, was 65 inches in height, and weighed approximately 220 pounds. Ms. Nsheiwat indicated that as she was attempting to return to her vehicle, she started to step forward with her left foot when her right foot slipped causing her to fall forward. The surveillance video shows that as Ms. Nsheiwat turns and starts to walk back toward her vehicle, her body suddenly flexes forward and downward. Ms. Nsheiwat then impacts the ground with her knees and hands. Ms. Nsheiwat's kinematics are consistent with a loss of traction between her right foot and the ground. As Ms. Nsheiwat started to swing her left foot forward, her body weight would be transferred to her right foot. A loss of traction between Ms. Nsheiwat's right foot and the ground would cause her foot to slide backward and result in the rest of her body moving suddenly forward. A subsequent loss of balance could then result in Ms. Nsheiwat's upper body rotating forward and falling toward the ground. A pedestrian falling forward will instinctively put their hands out to help protect their face and body from impacting the ground. Ms. Nsheiwat extended her hands in such a manner and therefore contacted the ground with her knees and hands as a result of the fall.

---

[11] Redfern, M.S., Cham, R., et al (2001). Biomechanics of Slips, Ergonomics, Vol. 44, No. 13, 1138-1166.
[12] Cham, R. and Redfern, M.S. (2001). Lower Extremity Corrective Reactions to Slip Events, 34, 1439-1445.
[13] Marigold, D.S., et al (2002). Role of the Unperturbed Limb and Arms in the Reactive Recovery Response to an Unexpected Slip During Locomotion, 89, 1727-1737.
[14] Brady, R.A., et al (2000). Foot Displacement but not Velocity Predicts the Outcome of a Slip Induced in Young Subjects While Walking, Journal of Biomechanics, 33, 803-808.
[15] Smeesters, C., et al (2001). Distrubance Type and Gait Speed Affect Fall Direction and Impact Location, 34, 309-317.
[16] Knox C.L. and Comstock, R.D. (2011). Video Analysis of Falls Experienced by Paediatric Iceskaters and Roller/Inline Skaters, Br J Sports Medicine, 40, 268-271.

Gary Hollander, Esq.
June 30, 2021
Page 5



Ms. Nsheiwat identified a plastic hanger as the object she stepped on with her right foot that caused her to slip and fall (Figure 2). The customer incident report dated July 9, 2018 also indicated that Ms. Nsheiwat stepped on a hanger that made her slip. A plastic hanger such as the one shown in Figure 2 would be capable of causing a loss of friction between the bottom of Ms. Nsheiwat's foot and the ground that resulted in the kinematics associated with her fall.



**Figure 2. Photographs depcicting a plastic hanger in the cart return area where Ms. Nsheiwat fell.**

## Discussion:

A peer-reviewed, learned treatise entitled *Accidental Injury: Biomechanics and Prevention* defines injury or trauma in the following manner:[17]

- *"Trauma to a person is equivalent to the failure of a machine or a structure. Generations of engineers have studied the failure of machines and structures, and they have come to the conclusion that everything depends on stress. Every material has a critical value of stress below which it is "safe," and above which it "fails." An external load causes stress everywhere in a structure. The safety of the structure is judged by the stress at every point relative to the strength of the material. The safety of the structure is determined by the weakest link. If the critical stress is exceeded at the weakest spot, then the whole structure may be considered failed, seriously or otherwise. Engineers can design structures against failure. A person has to live with the structure he has. So a person has to understand the stress in one's body under traumatic circumstances."*

The scientific community refers to the mechanical process responsible for injury as an injury mechanism. A learned treatise by Whiting and Zernicke[18] entitled *Biomechanics of Musculoskeletal Injury* states:

- *"The question typically first asked in assessing injury is "How did it happen?" Accurately answering this query may establish a cause-and-effect relation between the events surrounding the injury and the injury itself. In biomechanical terms, this is the mechanism of injury. Mechanism, in this context, can be defined as the fundamental physical process responsible for a given action, reaction, or result."*

---

[17]  Nahum, A.M., and Melvin, J.W. (2002). <u>Accidental Injury: Biomechanics and Prevention, Second Edition</u>. Springer, New York.
[18]  Whiting, W.C. and Zernicke, R.F. (1998). Biomechanics of Musculoskeletal Injury. Champaign, Human Kinetics.

Gary Hollander, Esq.
June 30, 2021
Page 6



Moreover, an article published by King et al.[19] states that:

- *"In this branch of impact biomechanics, tests and analyses are conducted to determine the mechanical parameters involved in causing a certain injury. Generally, several reasonable hypotheses are proposed and tested, and the one that most consistently produces the same injury emerges as the mechanism of injury."*

From a biomechanical perspective, the relationship, or lack thereof, between an event and an injury is determined by the presence or absence of an injury mechanism.[20] An injury mechanism is the fundamental mechanical process that leads to tissue failure or biomechanical failure.[21] The scientific community has referred to an injury mechanism investigation as a "Failure Analysis."[22] The presence or absence of an injury mechanism was addressed by answering two critical questions:

1. Did the subject incident load the body in a <u>manner</u> known to damage the body part?
2. Did the subject incident load the body with sufficient <u>magnitude</u> to exceed the tolerance or strength of the body part?

If loads were applied in the proper manner and with sufficient magnitude to exceed the tolerance or strength of a body part, then an injury mechanism was present and causation between the subject incident and the injury cannot be ruled out. If an injury mechanism was not present (i.e. a load was not applied in the proper manner and/or with sufficient magnitude), then causation between the subject incident and the injury cannot be established.

*Lumbar Spine:*

According to the available documents, Ms. Nsheiwat underwent a lumbar spine MRI on September 28, 2018. The results of the study were interpreted to show broad-based disc bulging and fact arthropathy from L3 to S1. The injury mechanism responsible for lumbar intervertebral disc and facet trauma involves the sudden application of shear and compressive forces with associated bending that exceeds the limits of the disc tissue strength.[23,24,25] According to Dr. Sundar, Ms. Nsheiwat's lumbar injuries were exacerbated by her fall.

Ms. Nsheiwat slipped on a plastic hanger and landed on the ground on her arms and knees. ARCCA, Incorporated has measured the forces experienced within the spine during various fall events. This testing involved the use of an anthropomorphic test device (ATD) that fell in various directions from a standing posture onto a concrete surface. All of the testing was performed in accordance with peer-reviewed and generally-accepted methodologies.[26,27] The results demonstrated that the lumbar forces and accelerations experienced by Ms. Nsheiwat during the subject incident would be consistent with Dr. Sundar's diagnosis of exacerbation of her lumbar injuries.

---

[19] King, A.I., (2000) "Fundamentals of Impact Biomechanics: Part I – Biomechanics of the Head, Neck, and Thorax." Annual Reviews in Biomedical Engineering, 2: 55-81.
[20] Whiting, W.C. and Zernicke, R.F. (1998). Biomechanics of Musculoskeletal Injury. Champaign, Human Kinetics.
[21] King, A.I., (2000) "Fundamentals of Impact Biomechanics: Part I – Biomechanics of the Head, Neck, and Thorax." Annual Reviews in Biomedical Engineering, 2: 55-81.
[22] Stalnaker, R.L. (1993). Spinal Cord Injuries to Children in Real World Accidents (SAE 933100). Warrendale, PA. Society of Automotive Engineers.
[23] Crowell, R.R., Shea, M., Edwards, W.T., et al., (1993). "Cervical Injuries Under Flexion and Compression Loading." Journal of Spinal Disorders 6(2): 175-181.
[24] Adams, M.A., and Hutton, W.C. (1982). "Prolapsed Intervertebral Disc: A Hyperflexion Injury." Spine. 7: 184-191.
[25] Nahum, A.M. and Melvin, J.W. (2002) Accidental Injury: Biomechanics and Prevention. Springer-Verlag New York Inc.
[26] Society of Automotive Engineers (2001). Performance Specifications for Anthropomorphic Test Device Transducers (SAE J 2570).
[27] Society of Automotive Engineers (2003). Instrumentation for Impact Test – Part 1 – Electronic Instrumentation (SAE J 211-1).



As Ms. Nsheiwat fell to the ground there would be an initial acceleration and impact force produced at her knees which would result in loading of her lumbar spine. Ms. Nsheiwat's upper torso then rotated/fell forward until Ms. Nsheiwat's hands impeded her movement. Ms. Nsheiwat's lumbar spine would have undergone bending in conjunction with compressive, shear, and tensile forces. These data indicate that as Ms. Nsheiwat fell, her lumbar spine underwent the kinematics and loading consistent with the injury mechanism required for her diagnosed lumbar injuries. C

*Right Shoulder:*

According to the available documents, Ms. Nsheiwat was diagnosed with a rotator cuff tear (undersurface of the supraspinatus), impingement syndrome, and subacromial bursitis. The supraspinatus runs laterally from the postero-superior scapula to the head of the humerus. The supraspinatus tendon creates the connection between the supraspinatus muscle and the humeral head.[28] The subscapularis tendon is involved in internal rotation of the humeral head and adduction. The injury mechanism required to cause a rotator cuff tear involves loading through the upper arm that forcibly presses the humeral head against the acromion (the most superior bony appendage) and the coracoacromial ligament in the superior-posterior aspect of the glenoid fossa.[29,30,31] For example, a fall onto an outstretched arm would direct a load through the upper arm into the glenoid fossa. These shoulder injuries can also be chronic in nature and can be caused by repetitive microtrauma.[32] Repetitive microtrauma ensues through reoccurring use of the upper limb above the horizontal plane (e.g., during throwing, racket sports, and swimming), which continuously load the superior-posterior aspect of the shoulder joint.[33,34]

Review of the surveillance video clearly shows that Ms. Nsheiwat fell forward onto her hands as a result of the subject fall. This would result in loading directed up through Ms. Nsheiwat's right arm and humeral head into the acromion and the coracoacromial ligament. A segmental analysis of Ms. Nsheiwat that accounted for her specific attributes demonstrated that the forces applied during the subject incident would have been significantly greater than those experienced during daily activities.[35,36,37,38] Ms. Nsheiwat's right upper extremity injuries require loading through her right humerus and into the shoulder. These data indicate that as Ms. Nsheiwat fell, her right hand interacted with the ground. This interaction directed a load through her right humerus that resulted in her right upper extremity injuries. Consequently, Ms. Nsheiwat's right upper extremity injuries are directly related to her slip and fall event.

---

[28] Netter, F.H. (1989) <u>Atlas of Human Anatomy</u>, Ciba-Geigy Corporation
[29] Giaroli, E.L., Major, N.M., et al. (2005). "MRI of Internal Impingement of the Shoulder." American Journal of Radiology 185: 925-929.
[30] Weaver, J.K., (1987). "Skiing-related Injuries to the Shoulder." Clinical Orthopaedics and Related Research 216: 24-28.
[31] Warner, J.J., Higgins, L., Parsons, I.M., et al., (2001). "Diagnosis and Treatment of Anteriorsuperior Rotator Cuff Tears." Journal of Shoulder and Elbow Surgery 10(1): 37-46.
[32] Moore, K.L. and Dalley, A.F. (1999). Clinically Oriented Anatomy, Fourth Edition, Lippencott Williams and Wilkins.
[33] Moore, K.L. and Dalley, A.F. (1999). Clinically Oriented Anatomy, Fourth Edition, Lippencott Williams and Wilkins.
[34] Braun, S., Kokmeyer, D., and Millett, P.J., et al., (2009). "Shoulder Injuries in the Throwing Athlete." Journal of Bone and Joint Surgery 91: 966-978.
[35] Enoka, R.M., (2002). Neuromechanics of Human Movement, Third Edition. Champaign, IL, Human Kinetics.
[36] Nordin, M., and Frankel, V.H., (2001). Basic Biomechanics of the Musculoskeletal System, Third Edition. Philadelphia, PA, Lippincott Williams & Wilkins.
[37] Westerhoff, P., Graichen, F., Bender, A., et al., (2009) "In Vivo Measurement of Shoulder Joint Loads During Activities of Daily Living." Journal of Biomechanics, In Press.
[38] Murray, I.A., and Johnson, G.R. (2004). "A Study of the External Forces and Moments at the Shoulder and Elbow While Performing Everyday Tasks." Clinical Biomechanics. 19: 586-594.

Gary Hollander, Esq.
June 30, 2021
Page 8



It is important to note that the peer-reviewed and generally-accepted technical articles cited throughout this report are included as support for the methodologies employed and the conclusions developed through my independent analysis pertaining to the subject incident and the claimed injuries. The results of these scientific studies were not simply extrapolated to the subject incident and used in isolation to provide general opinions regarding the likelihood of an occupant to be injured in a fall incident. Rather, my evaluation regarding the lack of a causal relationship between the claimed injuries and the subject incident incorporated thorough analyses of the incident severity, occupant response, injury mechanisms, and an understanding of human tolerance using peer-reviewed and generally accepted methodologies.

**Conclusions:**

In conclusion, Ms. Nsheiwat's kinematics are wholly consistent with a slip and fall event resulting from her stepping and slipping on a plastic hanger which was on the ground in the shopping cart return corral of Walmart store #1241 in Davenport, Iowa. Furthermore, Ms. Nsheiwat's kinematics as a result of the slip and fall event produced the necessary injury mechanisms to result in her lumbar and right shoulder injuries. Therefore, a causal biomechanical relationship exists between Ms. Nsheiwat's slip and fall event and her diagnosed lumbar and right shoulder injuries.

These opinions are based upon a reasonable degree of biomechanical and scientific certainty. If you have any questions, require additional assistance, or if any additional information becomes available, please do not hesitate to call.

Sincerely,

Andrew J. Rentschler, Ph.D.